**UNITED STATES DISTRICT COURT**
**FOR THE WSTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| **MELISSA LOTT and EMERY RICHARDSON,** | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **CASE NO.** 3:26-CV-653-RGJ |
| **JEFFERSON COUNTY PUBLIC SCHOOLS,** | ) | |
| **Defendant.** | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

## I. NATURE OF THE CASE

1. This is an action brought by Plaintiffs, Melissa Lott ("Lott") and Emery Richardson ("Richardson") (collectively, "Plaintiffs"), by counsel, against Defendant, Jefferson County Public Schools ("Defendant") alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et. seq*.; the Kentucky Civil Rights Act ("KCRA"); violation of Plaintiffs' established rights to free speech under the First Amendment of the Constitution pursuant to the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983 ("Section 1983"); and retaliatory discharge under Kentucky law.

## II. PARTIES

2. Lott is a resident of Jefferson County, Kentucky, which is located within the geographical boundaries of the Western District of Kentucky.

3. Richardson is a resident of Jefferson County, Kentucky, which is located within the geographical boundaries of the Western District of Kentucky.

4. Defendant maintains offices and routinely conducts business in Jefferson County, Kentucky, which is located within the geographical boundaries of the Western District of Kentucky.

## III. JURISDICTION AND VENUE

5. Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1343; 28 U.S.C. § 1367; 42 U.S.C. § 2000e-5(f)(3); and 42 U.S.C. § 1983.

6. Jurisdiction is conferred on Lott's state law claims pursuant to 28 U.S.C. § 1367 because her state law claims arise from the same common nucleus of operative facts as her federal law claims and all of her claims form a single case and controversy under Article III of the United States Constitution.

7. Jurisdiction is conferred on Richardson's state law claims pursuant to 28 U.S.C. § 1367 because his state law claims arise from the same common nucleus of operative facts as his federal law claims and all of his claims form a single case and controversy under Article III of the United States Constitution.

8. Defendant is an "employer" as that term is defined by 42 U.S.C. § 2000e(b) and KRS 344.030(2).

9. Defendant is a "person" within the meaning of 42 U.S.C. § 1983.

10. Defendant, acting pursuant to a policy, practice, and/or custom, violated Plaintiffs' rights as protected by the First Amendment of the United States Constitution.

11. Lott was an "employee" as that term is defined by 42 U.S.C. § 2000e(f) and KRS 344.030(5).

12. Richardson was an "employee" as that term is defined by 42 U.S.C. § 2000e(f) and KRS 344.030(5).

13. Lott satisfied her obligation to exhaust her administrative remedies having filed a Charge of Discrimination (Charge No. 474-2026-01381) with the U.S. Equal Employment Opportunity Commission ("EEOC") against Defendant alleging discrimination based on her sex. Lott received her Notice of Suit Rights and timely files this action.

14. Richardson satisfied his obligation to exhaust his administrative remedies having filed a Charge of Discrimination (Charge No. 474-2026-01428) with the U.S. Equal Employment Opportunity Commission ("EEOC") against Defendant alleging discrimination based on his race. Richardson received his Notice of Suit Rights and timely files this action

15. A substantial part of the events, transactions, and occurrences concerning this case arose in the geographical environs of the Western District of Kentucky; thus, venue is proper in this court.

## IV. FACTUAL ALLEGATIONS

### A. Facts Common to Both Parties

16. Defendant's original group of Safety Security Administrators ("SSA") consisted of 74 employees and approximately 75% of the employees were people of color.

17. In or around December 2025, Defendant's Assistant Superintendent, Matt Anderson ("Anderson"), and Defendant's Role Group Manager, B.J. Ritter ("Ritter"), informed the SSA group that they were performing well, with a 98.6% approval rating from principals and assistant principals.

18. On or about January 15, 2026, Defendant held a meeting and announced that the SSA group would be reduced from 74 to 37 positions, with employees being selected based on

seniority and hire date. Lott was ranked 12th in seniority, and Richardson ranked 19th, which was safely within the retained group.

19. In or around February 2026, Defendant canceled the regularly scheduled monthly SSA meeting and instead directed staff to attend a Zoom call. Defendant announced that the number of positions would increase from 37 to 55, the job title would change from "Safety Security Administrator" to "Risk Assessment Coordinator" and the job duties would remain the same. Defendant further stated that the seniority would no longer be considered in the selection process, that the positions would be open to all applicants, and that the positions would be reassigned from reporting within the school to reporting under Defendant's Police Department. Defendant also announced a reduction in salary from $90,000 to $74,000.

20. The selection process included Defendant's Police Department officers visiting individual school buildings and asking principals' personal preferences as to which SSAs they would retain, even though the positions were being moved out of the school supervision and into the Police Department.

21. Defendant has also eliminated its Racial Equity, Culture, and Climate Department, which previously provided Diversity, Equity, and Inclusion training to district staff.

**B. Facts Relating to Melissa Lott**

22. Lott hereby incorporates paragraphs one (1) to twenty-one (21) of the Complaint as if the same were set forth at length herein.

23. Lott, who is a Black woman, began working for Defendant on or about February 27, 2012, as a Family Resource Youth Services Center Coordinator at The Academy at Shawnee. On or about August 22, 2022, Lott was promoted to the position of Safety Security Administrator ("SSA") at Federick Law Olmsted Academy North.

24. At all relevant times, Lott met or exceeded Defendant's legitimate performance expectations.

25. Following Defendant's January 15, 2026, announcement regarding the reduction of the SSA roles, Lott created and circulated a flyer on Facebook and emailed all of Defendant's board members detailing the role and impact of the restructuring on school safety. Lott's email was forwarded by a board member to Defendant's Chief of the Police Department, who ultimately made hiring decisions for the restructured positions.

26. Lott organized a campaign urging Defendant to retain SSAs in school buildings rather than move them to the Police Department and communicated with board members and district shareholders.

27. Lott served as a role group liaison and prepared two concession letters given to the JCPS Administration Union. The matters addressed in those letters were later discussed with and/or forwarded to the Superintendent and/or the Superintendent Advisory Board.

28. At Lott's school, an officer asked the principal to choose between Lott and Martin Baker ("Baker"), her male counterpart. The principal selected Baker, whose hire date was on or about August 8, 2022, despite the fact that he had more than ten years less seniority than Lott and ranked in the bottom 33 percent of the original 74 SSAs in terms of seniority.

29. Defendant also distributed a Google Form to principals to collect selection preferences. The form has since been closed and principals have stated they do not recall the email.

30. On or about April 3, 2026, Defendant announced the 55 individuals selected for the Risk Assessment Coordinator positions. Lott was not selected despite having served fourteen

years in the district, having seniority ranking 12th out of 74 employees, consistent positive performance and no disciplinary history.

31. The candidates selected for the position included three individuals, none of whom had prior SSA experience or possessed the required certifications and training for the SSA role. All had less relevant experience than Lott.

32. Defendant canceled all remaining monthly SSA meetings for the school year and neither management nor Human Resources provided any explanation as to why Lott was not selected.

33. Lott was placed on FMLA leave for the remainder of the school year due to the psychological impact of not being selected.

34. Following Lott's separation from employment, she applied for three additional positions with Defendant, including two Risk Assessment Coordinator positions. Lott was not offered any of these positions.

**C. Facts Relating to Emery Richardson**

35. Richardson hereby incorporates paragraphs one (1) through thirty-four (34) of the Complaint as if the same were set forth at length herein.

36. Richardson, who is a Black man, began working for Defendant on or about August 18, 2014, as a Success Coach at Fern Creek Elementary School. In 20216, Plaintiff was hired at Minors Lane Elementary School to continue working as a Success Coach. In 2017, Plaintiff assumed the position of In School Security Monitor at Byck Elementary School and subsequently served the same role at Carrithers Middle School beginning in 2020. In or around June 2022, Richardson was promoted to Safety Security Administrator ("SSA") at Thomas Jefferson Middle School.

37. At all relevant times, Richardson met or exceeded Defendant's legitimate performance expectations.

38. Following Defendant's January 15, 2026, announcement regarding the reduction of the SSA roles, Richardson was contacted by Wave 3 News and gave an interview that was aired on or about February 16, 2025, regarding the budget cuts and its impact.

39. Richardson organized a campaign urging Defendant to retain SSAs in school buildings rather than move them to the Police Department and communicated with board members and district shareholders.

40. At Richardson's school, an officer asked the principal to choose between him and CT Palmer ("Palmer"), his White counterpart. Although Richardson was ranked 19th in seniority and his counterpart ranked 28th, the principal expressed a preference to retain Palmer.

41. Defendant also distributed a Google Form to principals to collect selection preferences. The form has since been closed and principals have stated they do not recall the email.

42. On or about April 2, 2026, Defendant announced the 55 individuals selected for the Risk Assessment Coordinator positions. Richardson was not selected despite having served twelve years in the district at that time, having seniority ranking of 19th out of 74 employees, and no disciplinary history. Palmer, Richardson's White counterpart, was retained.

43. The candidates selected for the position included three individuals, none of whom had prior SSA experience or possessed the required certifications and training for the SSA role. All had less relevant experience than Richardson.

44. Following Richardson's separation from employment, he applied for several positions with Defendant, including four Risk Assessment Coordinator positions. Richardson was not offered any of these positions.

## V. CAUSES OF ACTION

### COUNT I: TITLE VII & KCRA- RACE DISCRIMINATION

45. Richardson hereby incorporates paragraphs one (1) through forty-four (44) of the Complaint as if the same were set forth at length herein.

46. Richardson is a Black individual.

47. Defendant discriminated against Richardson based on his race by terminating his employment.

48. Defendant's actions were willful, intentional and done with reckless disregard for Richardson's rights as protected by Title VII and the KCRA.

49. Richardson suffered damages as a result of Defendant's unlawful actions.

### COUNT II: TITLE VII & KCRA – SEX DISCRIMINATION

50. Lott hereby incorporates paragraphs one (1) through forty-nine (49) of the Complaint as if the same were set forth at length herein.

51. Lott is female.

52. Defendant discriminated against Lott based on her sex by terminating her employment.

53. Defendant's actions were willful, intentional and done with reckless disregard for Lott's rights as protected by Title VII and the KCRA.

54. Lott has suffered damages as a result of Defendant's unlawful actions.

## COUNT III: VIOLATION OF FIRST AMENDMENT

55. Plaintiffs hereby incorporate paragraphs one (1) through fifty-four (54) of their Complaint as if the same were set forth at length herein.

56. Lott engaged in speech that was constitutionally protected when she communicated with Defendant's board members, administration union, superintendent, and superintendent delegation regarding the anticipated impact of Defendant's restructuring and by sharing similar concerns through posts on social media.

57. Richardson engaged in speech that was constitutionally protected when, upon being contacted by the media, he provided an interview regarding Defendant's budget cuts, the resulting restructuring, and the anticipated impact of those cuts.

58. Plaintiffs' statements were spoken as citizens about a matter of public concern.

59. Defendant unlawfully retaliated against Plaintiffs for their engagement in a protected activity when it declined to retain them as part of its restructuring.

60. Defendant violated Plaintiffs' free speech and rights as protected by the First Amendment of the United States Constitution.

61. Defendant's actions are a deprivation likely to deter free speech, and Plaintiffs' speech was at least a motivating factor in the employer's actions.

62. Defendant's actions were willful, intentional and in reckless disregard of the Plaintiffs' rights as protected by the First Amendment.

63. Plaintiffs have suffered damages as a result of Defendant's unlawful actions.

## COUNT IV: VIOLATION OF THE KENTUCKY WHISTLEBLOWER ACT

64. Plaintiffs hereby incorporate paragraphs one (1) through sixty-three (63) of their complaint as if the same were set forth at length herein.

65. Defendant terminated Lott's employment in retaliation for her communications with Defendant's Board, administration union, superintendent, and superintendent delegation, and social media posts concerning matters of public concerns, in violation of KRS 61.102. Plaintiff's communications were a determining factor in the decision to terminate her employment.

66. Defendant terminated Richardson's employment in retaliation for his communication with the media concerning matters of public concern, in violation of KRS 61.102. Plaintiff's communications were a determining factor in the decision to terminate his employment.

67. Defendant's actions were willful, intentional and in reckless disregard of the Plaintiffs' rights as protected by Kentucky State Law.

68. Plaintiffs suffered damages as a result of Defendant's unlawful actions.

## VI. REQUESTED RELIEF

WHEREFORE, Plaintiffs, Melissa Lott and Emery Richardson, respectfully request that this court enter judgment in their favor and award them the following relief:

1. Permanently enjoin Defendant from engaging in any employment policy or practice that discriminates against an employee based on their race and/or sex;

2. Award Plaintiff all wages, benefits, compensation, and other monetary loss suffered as a result of Defendant's unlawful actions;

3. Award Plaintiff compensation for any and all other damages suffered as a consequence of Defendant's unlawful actions;

4. Award Plaintiff compensatory damages;

5. Award Plaintiff punitive damages for Defendant's violations of Title VII and KRS 61.103(2);

6. Award Plaintiff all costs and attorneys' fees incurred as a result of bringing this action;

7. Award Plaintiff pre- and post-judgment interest on all sums recoverable;

8. Award Plaintiff all other legal and/or equitable relief this Court sees fits to grant.

Respectfully submitted,

By: /s/ *Elizabeth Gatten*
Elizabeth Gatten, Atty No. 100651
BIESECKER DUTKANYCH & MACER, LLC
101 N Seventh Street
Louisville, KY 40202
Office: (502) 561-3484
Facsimile: (812) 424-1005
E-Mail: egatten@bdlegal.com

*Attorneys for Plaintiffs*

**DEMAND FOR JURY TRIAL**

Plaintiffs, Melissa Lott and Emery Richardson, by counsel, request a trial by jury on all issues deemed so triable.

Respectfully submitted,

By: /s/ *Elizabeth Gatten*
Elizabeth Gatten, Atty No. 100651
BIESECKER DUTKANYCH & MACER, LLC
101 N Seventh Street
Louisville, KY 40202
Office: (502) 561-3484
Facsimile: (812) 424-1005

E-Mail: egatten@bdlegal.com

*Attorneys for Plaintiffs*